UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN SYLVESTER,

                Plaintiff,                        Case Number 18-10464

v.                                          Honorable David M. Lawson

FCCI INSURANCE COMPANY,

                Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Kevin Sylvester was working at a construction site in Detroit, Michigan when a thief attempted to steal his employer's tool truck. Sylvester was run over while attempting to prevent the theft. Seeking to recover for his injuries, he has sued defendant FCCI Insurance Company, which issued a commercial vehicle insurance policy to Sylvester's employer, invoking the uninsured motorist coverage endorsement in that policy. FCCI insists that its policy does not cover his loss. The parties have filed cross motions for summary judgment, focusing on the uninsured motorist provisions of the policy. Sylvester suffered his injuries in an accident while occupying his employer's tool truck, and therefore he was an "insured person" under the policy. And the truck qualified as an "uninsured motor vehicle," based on the policy's precise definition of that term, when FCCI declined Sylvester's bodily injury claim. The Court will grant Sylvester's motion for partial summary judgment and deny FCCI's motion.

I. Facts
A. The Accident

The parties do not dispute the basic facts.

Kevin Sylvester worked for non-party Springline Excavating, LLC as a heavy equipment operator. On the day of his injury, August 15, 2017, Sylvester was working at a job site near the intersection of I-75 and Mack Avenue in Detroit, on a project known as the "Velodrome." Around 1:15 p.m., Sylvester was on his lunch break with several co-workers, seated near a Ford F-450 tool truck owned by Springline. Some tools carried in the truck were on the ground next to the vehicle, and the keys were in the ignition. Sylvester and two co-workers noticed two unidentified men who approached the truck, tossed some of the nearby tools into the back of it, and climbed into the cab. Sylvester and his co-workers jumped up and approached the truck, intending to remove the keys and foil the getaway of the would-be thieves.

Sylvester testified that he ran toward the truck, initially hoping that the men would flee after realizing that there were witnesses to the crime in progress. Undeterred, the men instead entered the cab of the truck, and one of them tried to start the engine. As Sylvester reached the driver side door of the truck, he put one foot up on the running board, with one hand holding onto the door's armrest, propping the door open as he reached into the cab of the truck with his other arm, trying to snatch the keys. At that point, Sylvester had an elbow on the armrest, both of his feet were on the running board, and he was "reaching all the way in, reaching for the key." The thief, meanwhile, according to Sylvester, was "just trying to kind of push my arms away, trying to keep me from — he wasn't trying to hurt me or anything like that, he was just trying to keep my arm from getting in there."

Sylvester was still hanging onto the side of the truck, trying to get the keys away, when one of the thieves succeeded in starting the engine and shifting the truck into drive. Sylvester was still clinging to the side of the truck, reaching into the cab, when the truck lurched forward and "took off fast." As the truck sped up, Sylvester lost his grip on the door and "slipped off" the

running board. He remembered "falling backwards" and "getting hit by the truck." The next thing he recalled was waking up in the hospital. When Sylvester fell to the ground, the rear wheels of the truck ran over his legs, causing severe injuries from which he still has not entirely recovered.

## B. The Policy

FCCI admits that it issued a commercial vehicle insurance policy that covered the tool truck. The policy contained an endorsement for "Michigan Uninsured Motorists Coverage," which begins as follows:

> We will pay all sums the "Insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

The policy defined some of the terms in the policy and this endorsement. "Insured" includes any named policy holder and "[a]nyone else 'occupying' a covered 'auto.'" The term "'occupying' means in, upon, getting in, on, out or off." The term "'uninsured motor vehicle' means a land motor vehicle . . . for which an insuring or bonding company denies coverage." The principal policy only obliquely alludes to the term "accident," via the following less-than-exhaustive recitation: "'Accident' includes continuous or repeated exposure to the same conditions resulting in 'bodily injury' or 'property damage.'" The defendant admits that the plaintiff's injuries meet the policy's definition of "bodily injury."

## C. The Claim

It appears that Sylvester's only recourse for recovering non-economic damages is the FCCI policy issued to his employer. He filed a worker's compensation claim and recovered his economic damages only. FCCI asserts — and Sylvester does not dispute — that Sylvester did not elect uninsured motorist coverage under his personal automobile insurance policy, and his own insurer has not provided any coverage for his injuries.

Sylvester submitted a claim for uninsured motorist benefits under the FCCI policy on November 1, 2017. On December 4, 2017, FCCI responded with a letter denying the claim because (1) the injuries did not result from an "accident," but instead from intentional acts by the persons who stole the truck; (2) Sylvester was not "occupying" the truck when he fell off of it and was injured; and (3) the truck was not an "uninsured motor vehicle."

Sylvester then sought to recover for bodily injuries under any other provision of the policy. FCCI responded that no other coverage was available, referring specifically to exclusions for worker's compensation, employee indemnification, and employer's liability.

## D. Procedural History

After FCCI denied his claim, Sylvester filed a complaint against it in the Wayne County, Michigan circuit court. FCCI removed the case to this Court invoking diversity jurisdiction. After discovery closed, the parties filed cross motions for summary judgment. They each have filed responses and replies to the respective submissions, and the matter is fully briefed.

## II. Discussion

The fact that the parties have filed cross motions does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir. 2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standard when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir. 2003).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the motion record, "[t]he court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Alexander v. CareSource*, 576 F.3d 551, 557-58 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

Here, though, the parties have not seriously contested the basic facts of the case. Where the material facts are mostly settled, and the question before the court is purely a legal one, the summary judgment procedure is well suited for resolution of the case. *See Cincom Sys., Inc. v. Novelis Corp.*, 581 F.3d 431, 435 (6th Cir. 2009).

This case is here under the Court's diversity jurisdiction, so the Court must "apply the same law that [the] state courts would apply." *Auburn Sales, Inc. v. Cypros Trading & Shipping, Inc.*, 898 F.3d 710, 715 (6th Cir. 2018) (citing *Kurczi v. Eli Lilly & Co.*, 113 F.3d 1426, 1429 (6th Cir. 1997)); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). That law usually comes from the state's highest court. *Auburn Sales, Inc.*, 898 F.3d at 715. "And where [the state's intermediate] appellate courts have spoken in the Supreme Court's absence, we will normally treat those decisions as authoritative absent a strong showing that the [state's Supreme Court] would decide the issue differently." *Ibid.* (quotation marks omitted). "In this latter scenario, we must also look to other available data, such as Restatements, treatises, law reviews, jury instructions, and any majority rule among other states." *Ibid.* The parties agree that Michigan law governs.

Each side argues that it is entitled to judgment in its favor as a matter of law. FCCI argues that it has no obligation to pay Sylvester's non-economic damages under the uninsured motorist endorsement for the same reasons it advanced in its denial letter: the injury did not result from an "accident"; Sylvester was not "occupying" the truck at the time; and the truck was not an "uninsured vehicle." Sylvester contends that all of these terms must be read to favor coverage.

These issues require the Court to interpret the insurance policy. Because "[i]nsurance policies are contracts," traditional contract rules of construction apply. *Henry Ford Health System v. Everest National Insurance Co.*, No. 341563, --- N.W.2d ---, 2018 WL 6070704, at *2 (Mich. Ct. App. Nov. 20, 2018) (quoting *Titan Insurance Co. v. Hyten*, 491 Mich. 547, 554, 817 N.W.2d 562, 567 (2012)). If the contract terms are not ambiguous, the contract's meaning is a question for the court to decide. *See In re Landwehr's Estate*, 286 Mich. 698, 702, 282 N.W. 873, 874 (1938) ("'Where the language of the writing is not ambiguous the construction is a question of law for the court on a consideration of the entire instrument.'" (quoting *Griffin Mfg. Co. v. Mitshkun*, 233 Mich. 640, 642, 207 N.W. 814, 814 (1926))).

Uninsured motorist coverage is not mandated by Michigan's no-fault insurance law; it is optional coverage. Michigan courts therefore construe those endorsements "without reference to the no-fault act." *Titan*, 491 Mich. at 554, 817 N.W.2d at 567 (quoting *Rory v. Continental Insurance Co.*, 473 Mich. 457, 466, 703 N.W.2d 23, 29 (2005)). The construction rules are straightforward: effectuate the intent of the parties; determine the intent from the words used; consider the words in context; ascribe common meanings to undefined contract terms; and relegate no term to insignificance. *American Tooling Center, Inc. v. Travelers Casualty & Surety Co. of America*, 895 F.3d 455, 459-60 (6th Cir. 2018) (quoting *Citizens Insurance Co. v. Pro-Seal Service Group, Inc.*, 477 Mich. 75, 83, 730 N.W.2d 682, 686 (2007)); *Drouillard v. American Alternative*

*Insurance Corp.*, 323 Mich. App. 212, 217, 916 N.W.2d 844, 846-47 (2018) (quoting *Hunt v. Drielick*, 496 Mich. 366, 372, 852 N.W.2d 562, 565 (2014)).

There is one other "basic principle of contract law," *Comerica Bank v. Cohen*, 291 Mich. App. 40, 47, 805 N.W.2d 544, 549 (2010): the Court may not rewrite the parties' contract or add terms that the parties did not include. *Reicher v. SET Enterprises, Inc.*, 283 Mich. App. 657, 665, 770 N.W.2d 902, 907 (2009) (citing *McDonald v. Farm Bureau Ins. Co.*, 480 Mich. 191, 197, 747 N.W.2d 811, 816 (2008)).

## A.  "Accident"

The policy does not fully define the term "accident."  The only definitional reference to the term describes "continuous or repeated exposure to the same conditions" causing injury or damage, which has nothing to do with the circumstances of this case.  When a specific definition is not found in the policy, Michigan courts have defined accident to mean "an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected." *Hawkeye-Security Insurance Co. v. Vector Construction Co.*, 185 Mich. App. 369, 374, 460 N.W.2d 329, 332 (1990).

Michigan courts also have explained that an occurrence is accidental unless both the conduct that caused the injury and the injury itself were intended by the actor.  As a general rule, "intentionality is evaluated from the standpoint of the insured, not the injured party." *Allstate Ins. Co. v. McCarn*, 466 Mich. 277, 282, 645 N.W.2d 20, 23 (2002).  That distinction is somewhat confounded in this case because the injured party and the nominal insured are one and the same — the plaintiff.  Nevertheless, the record sufficiently suggests that, whether assessed from the point of view of the plaintiff or the unidentified thief, the injuries that the plaintiff suffered when he was run over by the truck were not intended by either of them.

If an insured intended both an act and its consequence, courts will find no "accident." "On the other hand, if the act was intended by the insured, but the consequences were not, the act does constitute an accident, unless the intended act created a direct risk of harm from which the consequences should reasonably have been expected by the insured." *McCarn*, 466 Mich. at 282-83, 645 N.W.2d at 23. "'An "accident," within the meaning of policies of accident insurance, may be anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and *unexpected by the person injured or affected thereby* — that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part.'" *Hawkeye-Security*, 185 Mich. App. at 374, 460 N.W.2d at 332 (quoting *Frankenmuth Mutual Insurance Co. v. Kompus*, 135 Mich. App. 667, 678, 354 N.W.2d 303, 309 (1984) (emphasis added)).

In this case, Sylvester's testimony certainly suggests that he did not intend to be run over by the truck, or even to put himself at serious risk of such an injury. Sylvester testified that his initial hope, which motivated a confrontation that lasted mere seconds, was that the thieves would flee as soon as they realized they were spotted. Failing that, Sylvester hoped to foil their flight by merely snatching the keys from the ignition of the truck, which obviously would have prevented the movement that resulted in his injury. Sylvester and the other witnesses testified that the thieves never threatened or took any aggressive actions toward them, and when Sylvester was hanging onto the truck the driver merely attempted to push his arm away to stop him taking the keys. There are no other contrary facts. The injury resulted when the truck suddenly lurched forward, to Sylvester's surprise. If the plan had gone as he intended, the truck never would have moved; thus, he had no reason immediately to foresee that by attempting to immobilize the vehicle he would in fact be run over by it.

Similarly, the record supports the conclusion that the unknown driver also did not intend to injure Sylvester, but merely was attempting to evade his grasp and escape with the truck. The facts here contrast sharply with cases where Michigan courts have concluded that no "accident" occurred because a tortfeasor engaged in a personal or vehicular assault on the victim, intended to cause him harm, for instance, where another driver physically assaulted the insured after a minor accident. *See Morosini v. Citizens Insurance Co. of America*, 461 Mich. 303, 304, 602 N.W.2d 828, 829 (1999) (no "accident" occurred where "[a]fter a minor traffic accident, the plaintiff was assaulted by the driver of the other car"); *see also Liberty Insurance Corp. v. Bowles*, 36 F. Supp. 3d 756, 760 (E.D. Mich. 2014) ("Domestic violence is never an accident; physical abuse is not the negligent breach of one's duty of care, but rather intentional conduct, intended to cause harm.").

The mere fact that a dangerous instrumentality was set into motion also is not sufficient to show that either Sylvester or the thief intended an injury. There is no evidence that either of them subjectively predicted or intended that Sylvester would fall beneath the wheels of the truck after he lost his footing. Even conduct by an insured as foolhardy as pointing a gun at another person's face and pulling the trigger, believing (incorrectly) that the gun was unloaded, has been found to be unintentional, and the resulting fatality "accidental," where the insured assumed that the gun would not fire. *See McCarn*, 466 Mich. at 284, 645 N.W.2d at 24. The circumstances here are benign by comparison; had the truck been immobilized as the plaintiff intended, or if it had been driven away without incident as the thief apparently intended, no bodily injury would have occurred. The injury resulted only from the unfortunate tragic fact that the plaintiff happened to fall under the wheels when he was dislodged by the truck's sudden lurch.

The occurrence here was an "accident" within the meaning of the uninsured motorist endorsement.

## B. "Occupying"

The FCCI insurance policy was purchased by Sylvester's employer. But Sylvester would enjoy the status as a "named insured" under that policy if he was "occupying" a "covered auto" at the time of his injury.

According to the policy definition, Sylvester was "occupying" the truck as he was clinging to the side, with both feet on the running board, and one arm holding the driver side door open and propping himself up, while he leaned into the cab with his torso and arms attempting to retrieve the keys. That circumstance amounts to "occupancy" whether Sylvester is regarded as being (partly) "in" the truck, "upon" the side of it, including the running board, or in the process of "getting in, on, out or off" of the vehicle. The Sixth Circuit reached the same conclusion in a case where the plaintiff was injured while clinging to the hood of a Ford Fusion. *Bennett v. State Farm Mutual Automobile Insurance Co.*, 731 F.3d 584, 585 (6th Cir. 2013) ("Occupants are normally inside vehicles, not on them. But the parties to a contract can define its terms as they wish; and State Farm has done so here.").

The policy here does not specifically define the terms "on" or "upon," but their ordinary meanings embrace the facts of this case. Merriam-Webster defines "upon" as a synonym for "on," which is construed variously to denote being "in contact with an outer surface" or "in close proximity with," as well as to designate "a source of attachment or support" or "means of conveyance." The relationship of the plaintiff and the truck in this case sensibly comports with any or all of those constructions. Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/on (definition of "on").

For the purpose of the uninsured motorist endorsement, Sylvester's injury resulted from his occupancy of the truck. And he is a named insured under the FCCI policy, including the uninsured motorist endorsement.

## C. "Uninsured Motor Vehicle"

This element of the contract presents a closer question. To prevail under the endorsement, Sylvester must show that his damages "result[ed] from the ownership, maintenance or use of [an] 'uninsured motor vehicle.'" Although the tool truck was insured under FCCI's commercial vehicle insurance policy, Sylvester says that it actually qualifies as an "uninsured motor vehicle" under the endorsement's definition of that term. An "uninsured motor vehicle" under the FCCI policy is "a land motor vehicle . . . for which an insuring or bonding company denies coverage." Sylvester reasons that the tool truck fits that definition because FCCI denied his claim for bodily injury coverage for the damages caused by the thief when he drove the truck over Sylvester's legs.

Sylvester's argument is based on a rather unremarkable proposition under Michigan law: a motor vehicle covered by an insurance policy nonetheless can be an uninsured vehicle if it is driven by an individual who is not a covered driver. *See Allstate Ins. Co. v. Detroit Auto. Inter-Ins. Exch.*, 142 Mich. App. 436, 438, 369 N.W.2d 908, 909 (1985) (vehicle driven by an "excluded driver" under the policy). It all depends on how the term "uninsured motor vehicle" is defined by the policy.

Here, Sylvester submitted a bodily injury claim to FCCI for injuries caused by the thief's operation of tool truck, which FCCI insured. Because the thief manifestly was not operating the truck with the permission of the owner, he was not an "insured" subject to the policy's liability indemnification provisions. Because the thief was not a covered driver, FCCI denied coverage for the damage caused by the operation of that vehicle. That was not the expressed reason FCCI

denied the bodily injury claim. But the policy's definition of who is insured under the "Covered Autos Liability Coverage" section certainly supports that conclusion, and FCCI agrees. So for the purpose of this accident and this driver, FCCI denied coverage for this "land motor vehicle." That action satisfies the definition of "uninsured motor vehicle" in FCCI's uninsured motorist endorsement.

Citing *Scott v. Farmers Insurance Exchange*, 266 Mich. App. 557, 702 N.W.2d 681 (2005), FCCI argues that the focus of the inquiry must be on whether the *vehicle* is insured, not the *driver*. In that case, the plaintiff was a passenger in a vehicle whose owner allowed the insurance policy to lapse. He was injured when the driver — not the car's owner — drove the car into a tree. The plaintiff's own insurance company denied his claim for uninsured motorist benefits because the driver was insured under a separate policy on his own vehicle and therefore he was not an "uninsured motorist." The trial court accepted that argument. The court of appeals reversed, observing that the policy language made the uninsured motorist coverage "contingent on whether the vehicle is insured, not on whether the driver is insured." *Id.* at 563, 702 N.W.2d at 685. But that did not settle the question whether a *vehicle* can be deemed uninsured based on the uninsured status of the *driver*. *See ibid.* ("Nonetheless, we acknowledge that some car insurance policies are designed to cover a *vehicle* when, as here, the *person* they insure does not own it, but is merely driving it with the permission of the owner."). Once again, it all depends on the policy language. *Ibid.* ("[W]e strive to apply the language that the parties originally agreed upon.").

FCCI also relies on *Hafner v. Detroit Automobile Inter-Insurance Exchange*, 176 Mich. App. 151, 438 N.W.2d 891 (1989). In that case, the plaintiff was injured when he fell from the bed of his own pickup truck. He had accepted the offer of a stranger to help him unload at a job site, instructing him to back the truck to an unloading area. While the plaintiff stood on the truck

bed, the stranger put the truck in gear, causing the plaintiff to fall. *Id.* at 152-53, 438 N.W.2d at 891. The insurance company denied coverage because the unknown driver was operating the truck with the plaintiff's permission and therefore was an insured person under the plaintiff's policy. *Id.* at 153, 438 N.W.2d at 891. The court agreed and upheld the denial of coverage because the pickup truck in that instance was not "uninsured." *Id.* at 156, 438 N.W.2d at 893. *Hafner* does not preordain the result here, though, because of a critical opposite fact: the thief was *not* operating the tool truck with permission, and therefore was *not* an insured under the FCCI policy. FCCI did not cover the vehicle for this accident when operated by the thief.

Addressing that point, FCCI cites *Seymour v. Lakewood Hills Ass'n*, 927 S.W.2d 405, 408 (Mo. Ct. App. 1996), a case where uninsured motorist coverage was denied to a sanitation worker who was injured by a fellow employee's operation of a garbage truck. The truck's insurer had rejected coverage of the tort lawsuit against the truck driver based on the policy's fellow-employee exclusion. And the court held that uninsured motorist coverage was not available to the plaintiff because the truck was insured, despite the denial of coverage for the driver. 927 S.W.2d at 408. Although the court mentioned the distinction between an uninsured motor vehicle and an uninsured driver, it did so in the context of a Missouri statute that mandated uninsured motorist coverage, noting that "the policy and statutory definitions of 'uninsured motor vehicle' refer to a vehicle for which coverage is lacking, not an individual operator." *Id.* at 408. Moreover, the court observed that another Missouri statute "expressly provides that uninsured motorist coverage need not extend to 'any liability on account of bodily injury or death of an employee of the insured while engaged in the employment, other than domestic, of the insured.'" *Ibid.* (citing Mo. Ann. Stat. § 303.190.5). The court was concerned that allowing uninsured motorist coverage in that case would nullify the fellow employee exclusion, which the legislature expressly allowed. *Ibid.* Finally, the court

construed the statute mandating uninsured motorist coverage as "designed to require coverage only against injuries arising from collisions with *other vehicles* lacking liability coverage." *Id.* at 408–09. That reasoning does not translate to this case, where there is no mandatory uninsured motorist coverage, and the Court must construe the endorsement here "without reference" to any statutory provisions. *Rory*, 473 Mich. at 466, 703 N.W.2d at 29.

The *Seymour* court's construction of the Missouri statute is the interpretation FCCI urges this Court to apply to its uninsured motorist endorsement. And if the endorsement defined "uninsured vehicle" to exclude the insured's own vehicle, that construction would be warranted here. Other policies have done just that. *See Jarrell v. Detroit Auto. Inter-Ins. Exch.*, 106 Mich. App. 332, 335, 308 N.W.2d 198, 199 (1981) (denying coverage under a policy that stated "an uninsured automobile shall not include (1) a motor vehicle owned by the insured or any resident of the same household"); *Thompson v. Citizens Ins. Co. of Am.*, No. 208272, 1999 WL 33441277, at *2 (Mich. Ct. App. June 11, 1999) (denying coverage where the vehicle was self-insured and the policy stated that "'uninsured motor vehicle' does not include any vehicle, trailer or equipment . . . [s]elf-insured under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent"). But to accept that invitation, the Court would violate another cardinal rule of contract interpretation, which forbids rewriting the parties' contract to add terms that the parties did not include. *See Reicher*, 283 Mich. App. at 665, 770 N.W.2d at 907 (citing *McDonald,* 480 Mich. at 197, 747 N.W.2d at 816 (2008)).

There is some tension in the policy language here, because it defines an uninsured *vehicle* in the body of an endorsement entitled "Uninsured *Motorist* Coverage." But that inconsistency is addressed by the policy definitions, under which FCCI would not insure a "covered auto" that was not used "with . . . permission," and where FCCI defined an "uninsured motor vehicle" as "a land

motor vehicle . . . for which an insuring or bonding company denies coverage." If the driver of the vehicle is not a covered driver, then the insurer rightfully may deny coverage for that vehicle, and for that purpose the vehicle is uninsured.

As noted above, that is not a novel proposition. The twist in this case, however, is that the coverage denial is for the same vehicle whose insurance includes an uninsured motorist endorsement. That endorsement contains its own definition of who is an "insured"; "[a]nyone . . . 'occupying'" the vehicle is included. The confluence of these definitions could lead to unusual results, as is evident here. Hypothetically, the thief's confederate, if injured as a passenger in a post-theft collision due to the driver's negligence, might even be included. But the Court's task is to follow the policy language where it leads, not to rescue the defendant from its drafting choices.

FCCI suggests that adopting Sylvester's interpretation of the uninsured motorist definition would lead to the absurd result that the tool truck would be both insured and uninsured at the same time. But "[w]hether a vehicle is 'uninsured' as the term is colloquially used is irrelevant where the term is defined within the contract." *Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 638-39 (E.D. Mich. 2011) (noting that "[w]here a contract defines a term, the contractual definition of the defined term controls over the common usage of the term" (citing *Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel,* 460 Mich. 558, 596 N.W.2d 915, 919-20 (1999); *Group Ins. Co. of Michigan v. Czopek,* 440 Mich. 590, 489 N.W.2d 444, 447 (1992))). The *Collins* court resolved a similar apparent paradox by keeping faith with the policy language:

> Just as the court's idiosyncratic but clear definition of "UIM Policy" controls the meaning of the court's prior order, so too the definition of an "uninsured motor vehicle" in Defendant's contract prevails over what might be more common usage of the term. A vehicle can indeed be both insured and uninsured at once. The apparent contradiction may seem to describe a sort of Schrödinger's insurance coverage, but the court lacks authority to redefine the unambiguous terms of a valid contract.

*Id.* at 643 (citing *Rory,* 473 Mich. at 469, 703 N.W.2d at 30-31).

The interpretation of the term "uninsured motor vehicle" does not require resort to quantum mechanics or the elegant thought experiments posed by physicist Erwin Schrödinger and the fate of his cat. Instead, the Court applies the policy definitions, which are unambiguous, and which lead to the conclusion that Sylvester's injuries "result[ed] from the ownership, maintenance or use of the "uninsured motor vehicle."

### III. Conclusion

The parties' motions and responses setting forth the issues and arguments were augmented by oral argument held on January 3, 2019. The terms of the uninsured motorist endorsement are unambiguous and can be interpreted by the Court on the motions for summary judgment. Because coverage under that endorsement does extend to the loss claimed by plaintiff Kevin Sylvester, he is entitled to a judgment in his favor as a matter of law on the issue of coverage.

Accordingly, it is **ORDERED** that the defendant's motion for summary judgment (ECF No. 17) is **DENIED**, and the plaintiff's motion for partial summary judgment (ECF No. 16) is **GRANTED**.

It is further **ORDERED** that the parties appear for a status conference on **February 4, 2019 at 9:00 a.m.** to discuss further case management issues.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Date: January 24, 2019

<div style="border:1px solid">

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on January 24, 2019.

s/Susan K. Pinkowski
SUSAN K. PINKOWSKI

</div>